**Opal Cummings, Plaintiff-Appellant, v. Commonwealth Edison Company, Defendant-Appellee,**

**Gen. No. 50,002.**

First District, First Division.
November 1, 1965.
Rehearing denied January 3, 1966.

Harry R. Booth, of Chicago (David Husman, of counsel), for appellant.

Isham, Lincoln & Beale, of Chicago (Charles A. Bane, Arthur C. Gehr, Robert F. Hanley, and Sharon L. King, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff, Opal Cummings, a customer of defendant, Commonwealth Edison Company, filed a class suit on behalf of all customers of Edison, alleging that rates charged by Edison for electricity service are and were

excessive to the extent that its plant and property account includes excess sums paid by Edison for electrical equipment as a result of a conspiracy between electrical equipment manufacturers in violation of antitrust laws. The action seeks (1) the refund to such customers of monies repaid to Edison as the result of civil antitrust suits instituted by it in the federal courts to recover such overpayments between 1950 and 1961; (2) an accounting of other damages over and above these payments; and (3) a declaratory judgment to determine the legal rights of Edison's customers to such monies.

The circuit court sustained Edison's motion to dismiss for want of jurisdiction of the subject matter on the ground that the Illinois Commerce Commission had exclusive jurisdiction. Plaintiff appeals.

The events giving rise to this controversy began on November 1, 1959, when the Department of Justice ordered a series of grand jury investigations for the purpose of determining whether certain electrical equipment companies including General Electric, Westinghouse, and Allis-Chalmers among others, had violated the federal antitrust laws in connection with the manufacture and sale of such electrical equipment. After an indictment was returned on May 25, 1960, judgments of guilt were entered against such companies and a number of individual officers of some of the companies. Thereafter, on August 20, 1961, Edison, the defendant herein, filed a series of civil suits in the United States District Court for triple damages and other relief under the antitrust laws against General Electric, Westinghouse, Allis-Chalmers and numerous other companies from which it had purchased electrical equipment over a period of many years. Edison in such suits charged that these companies engaged in a series of conspiracies and combinations in unreasonable restraint of interstate trade and commerce in sales of electrical equipment to Edison commencing on or about January 1, 1950.

Plaintiff commenced this action in the circuit court on July 23, 1963 by filing a complaint which she amended from time to time on behalf of herself and all customers of Edison since January 1, 1950, alleging, inter alia, that the total payments between 1950 and 1960 by Edison to General Electric, Westinghouse and other electric equipment suppliers violating the antitrust laws for electrical equipment were substantially in excess of $150,000,000; that all such overcharges paid by Edison have been included by Edison in its property and plant account; that such property and plant account of Edison constitutes one of the principal factors upon which Edison's rates and charges from the plaintiff and other customers of Edison are now and have been for many years fixed and determined; and that all such damages have been assumed entirely by Edison's customers and none of such burdens have been assumed by Edison's shareholders. On January 13, 1964, plaintiff filed a motion for a temporary injunction seeking to impound $1,000,000 received or to be received by Edison from Westinghouse as part of a settlement agreement wherein Westinghouse agreed to pay Edison $5,000,000 as damages suffered by Edison due to sales of electrical equipment by Westinghouse to Edison in violation of the antitrust laws. This motion was withdrawn by plaintiff in open court on January 13, 1964.

On February 11, 1964, plaintiff filed an amended complaint. Defendant thereafter made a motion to dismiss the amended complaint which motion included an order of the Illinois Commerce Commission authorizing accounting adjustments due to Edison's settlements with Westinghouse and other companies. The amended complaint was superseded by the filing of an amended and supplemental complaint in which plaintiff incorporated her complaint and, additionally, alleged inter alia that Edison on February 4, 1964, filed a petition with the Commission requesting that it approve certain accounting

adjustments with respect to amounts received or to be received from General Electric or other electrical equipment companies, and that Edison gave no notice thereof to its customers or to the circuit court, and that the Commission by its order on March 10, 1964, approved Edison's application for accounting adjustments in entirety without a public hearing; that the Commission's order ignored the claims of the Attorney General (in a petition filed by the Attorney General of the State of Illinois seeking to intervene in the federal antitrust proceedings) that the money should be refunded to Edison's customers; that in April, 1964 Edison and General Electric agreed to a settlement of Edison's claims against General Electric for $7,500,000 and that Edison had already disposed of the largest proportion of its antitrust suits; that Edison failed to exercise proper diligence and care in the purchase of such electrical equipment at rigged prices, and recklessly and intentionally misled plaintiff and other customers. Plaintiff's amendment to her amended and supplemental complaint alleged that Edison committed a fraud upon the circuit court by representing that Edison's customers were entitled to a hearing and then inducing the Commission to enter ex parte the order of March 10, 1964, and that Edison sought and obtained the order for the purpose of enabling it to retain such funds.

Edison again moved to strike and dismiss and, by order entered June 9, 1964, the circuit court dismissed the action for want of jurisdiction of the subject matter. Appeal is taken from this order.

Plaintiff contends that the trial court decree should be reversed on the grounds that her complaint does not involve the Commission's rate making functions and that the issues are within the exclusive jurisdiction of the equity courts and beyond the powers of the Commission.

It is well established that the common law right to recover reparations for unreasonable charges by public

utilities has been superseded by the Public Utilities Act. See Terminal R. Ass'n of St. Louis v. Public Utilities Commission, 304 Ill 312, 317, 136 NE 797 (1922). The question remains whether plaintiff is, in effect, bringing such an action.

In affirming the denial of the motion of the Attorney General of Illinois to intervene on behalf of the consumers of Illinois in Edison's federal suit, Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 315 F2d 564, 567 (1963), the United States Court of Appeals for the Seventh Circuit said:

> The consumers' rights, if any, to reparation for their consequential hurt arise from higher rates and charges for services provided by plaintiffs. . . . The impact on them was remote and took the shape of allegedly higher rates paid for utility services— rates established as legal by the Illinois Commerce Commission.

It is apparent that the sole basis for plaintiff's claim, irrespective of the label she chooses to employ, is that she and other customers were charged excessive rates for which she wants reparations. The fact that plaintiff does not seek to upset a rate schedule or fix utility rates for the future does not bring this matter within the powers of a court of equity and outside the exclusive jurisdiction of the Illinois Commerce Commission. The case of Alton Brick Co. v. Alton Water Co., 42 Ill App2d 451, 192 NE2d 599 (1963), involved a suit to recover for excessive charges by the defendant water company. The water company, after having its rates held by the Commission to be illegally high, posted a supersedeas bond and continued to charge the high rate while the matter was up for rehearing and appeal. The plaintiff there contended that she had a right to a common law action for a refund as well as an action on the bond. The defend-

ant, as in the instant case, relied upon section 72 of the Public Utilities Act which provides that:

' When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount . . . (Ill Rev Stats 1963, c 111⅔, § 76).

As the court concluded in the Alton case: "Consistently since the Terminal R. R. case [Terminal R. Ass'n of St. Louis v. Public Utilities Commission, 304 Ill 312, 136 NE 797], the courts of this state have . . . held that the common law right to recover reparations for unreasonable charges by public utilities has been superseded by the statutory provisions of said Section 72. . . . It is thus clear to us that said Section 72 provides the exclusive remedy in this state for securing a refund, and bars common law actions such as was instituted under Count II of the Complaint herein." 42 Ill App2d 464.

It is important to note that, as in the instant case, plaintiff in the Alton case did not seek to change any rate schedules. Moreover, the excessive character of the rates had been conclusively established in the Alton case, and the court was aware of the proper rate that should have been charged, yet the court did not recognize the existence of any equitable trust fund.

Natural Gas Pipeline Co. v. Federal Power Commission, 141 F2d 27 (7th Cir 1944), is another example of the court's refusal to entertain a common law action for a refund despite the fact that plaintiff did not seek to

interfere with any present or future rate schedules. In that case the plaintiff had filed a class action to recover from Peoples Gas Company the savings obtained by it from reductions ordered by the Federal Power Commission in the wholesale price of gas purchased during a definite period. The basis of the contention was that the rates charged by Peoples during the period were excessive and unreasonable to the extent that Peoples failed to reduce its rates pro tanto when its wholesale gas costs decreased. The court held that plaintiff's only remedy lay in a reparation proceeding before the Illinois Commerce Commission and commented:

> What petitioner now asks, is to have this court ascertain that there were excess collections from him and the amount thereof. But the only way that we could do this would be to usurp the functions of the Illinois Commerce Commission by fixing what we consider would have been a reasonable rate for the Peoples Company to charge during the period in question, and the specific class or classes of customers entitled to a refund by reason of the Company's charges in excess thereof. We refuse to do so because this court has no rate-making powers. . . . Here, no order of the Commission was ever violated because the matter was not even submitted to that tribunal. Thus there was a plain failure to recognize that the Illinois Commerce Commission has exclusive jurisdiction over actions in which reparation is sought for allegedly excessive rates, Medusa Portland Cement Co. v. Illinois Cent. R. Co., 287 Ill App 549, 5 NE2d 782, and that the intent of the legislature was to require an application therefor to be first made to the Commission, thus precluding court action for such reparation until the Commission heard the claim and entered an order . . . (pp 29, 30).

In the case before us, plaintiff seeks damages allegedly incurred by the payment of rates asserted to be excessive because based upon inflated prices paid by Edison for electrical equipment. As the court observed in the Natural Gas Pipeline case, the only way a court could grant this remedy would be to usurp the functions of the Illinois Commerce Commission and make a determination of what would have been a reasonable rate for the Edison Company to have charged during the period in question and the specific class or classes of customers entitled to a refund by reason of the company's charges in excess thereof.

The court in the Natural Gas Pipeline case also dealt with the contention made here by plaintiff that an equitable trust fund existed:

> [P]etitioner . . . requests the court, apparently under some strange extension of its ancillary powers as a court of equity, to create another fund out of money collected by Peoples Company after March 31, 1942 until February 5, 1943, under lawful rates prescribed by the Illinois Commerce Commission. Not only was Peoples Company not a party when the original suit began, but, more important, the money collected by Peoples Company has never been in the possession or under the control of this court. The court has no lien upon such money, or any jurisdiction in respect thereto growing out of, or incidential to, the original suit herein or the proceeding ancillary thereto. The "fund" or "trust fund" which petitioner seeks to conjure up is entirely illusory (pp 28, 29).

In the instant case it is also true that the money collected by Edison was never in the possession or under the control of the circuit court so as to support a theory of an equitable trust fund or constructive trust existing

on behalf of the customers of the Edison Company. As defendant points out in its brief, the earlier Natural Gas Pipeline case, 128 F2d 481 (7th Cir, 1942), cited by the plaintiff, involved the ancillary jurisdiction of the court to dispose of a fund collected under a stay order previously entered by that court. Likewise, the case of the Federal Power Commission v. Interstate Natural Gas Co., 336 US 577 (1949), relied on by the plaintiff, is not applicable in that it involves the disposition by the Court of Appeals of a fund accumulated under a stay order issued by that court pending review of a rate order. In those cases the court is distributing a fund of its own creation. 336 US 588.

We are of the opinion that exclusive jurisdiction with respect to this original action based on allegedly excessive rates charged by an Illinois utility is vested in the Illinois Commerce Commission. Our recent opinion in Adler v. Northern Illinois Gas Company, 57 Ill App2d 210, 206 NE2d 816 (1965) confirms this conclusion. In the Adler case, the plaintiff brought an action for, among other things, an accounting for a large sum of money which, plaintiff alleged, the defendant fraudulently acquired through the sale of natural gas to its customers at large windfall profits. In affirming the circuit court's dismissal of the action for want of jurisdiction of the subject matter, we stated that:

> The Illinois Commerce Commission has exclusive jurisdiction over complaints of excessive rates charged by public utilities, and the courts have jurisdiction over these matters only upon administrative review of the decisions of the Commission, that is, only after utilization and exhaustion of the remedies available before the Commission. Because the plaintiff here has chosen to by-pass the Commission, thus ignoring the procedure prescribed by statute for the prosecution of such claims, the trial court

328

was without jurisdiction to grant him relief. Until plaintiff has utilized or exhausted his remedies before that Commission, the Circuit Court is "without jurisdiction of the subject matter," save on administrative review. Ill Rev Stats 1963, c 111⅔, ¶ 72; Peterson v. Domestic Utility Services Co., 33 Ill App2d 374, 377–378, 179 NE2d 444 (1961). . . . Public Utility rate-making matters and questions of profits are to be resolved by resort, in the first instance, to the Illinois Commerce Commission, following the administrative procedures prescribed by the legislature. Until these prescribed statutory procedures are exhausted, such matters are not a subject for court action. Ill Rev Stats 1963, c 111⅔, § 72 (pp 218, 220).

Plaintiff's complaint with its amendments is not sufficient to support its general allegations of fraud. A similar allegation of fraud was made in the Adler case, but there also we found an absence of supporting facts and said:

We are *not* persuaded that because defendant's earnings for the 15-month period here involved were in excess of 6% or 6½% on defendant's original cost of property, less depreciation reserve, these earnings are "tantamount to a fraud upon its customers." The plaintiff's allegations that these "excessive and extortionate" rates were "known" to be such by defendant, and that defendant "conspired" to deprive plaintiff and other customers of a hearing to determine the reasonableness of its rates by "inducing" the Illinois Commerce Commission not to hold such hearings, do not and cannot, in the absence of specific supporting facts, sustain plaintiff's theory that defendant's earnings and profits are "tantamount to a fraud upon its customers." (p 219.)

As we observed in the Adler case (p 218), "[a]n allegation of conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion . . . [and] at best, mere vituperation." Owens v. Green, 400 Ill 380, 393, 81 NE2d 149 (1948). Moreover, we find Midland Trail Bus Co. v. Staunton-Livingston Motor Transp. Co., 336 Ill 616, 168 NE 634 (1929) inapposite. In that case it was not necessary to the decision of the equity court to usurp the exclusive jurisdiction of the Commerce Commission. The only question before the court in Midland involved an adjudication of contractual rights and dealings between parties with respect to an issued certificate of convenience and necessity. More important, the court was presented with specific factual evidence of possible fraud and deceit in that the transportation company to which the certificate had been issued "at no time owned any of the busses, paid any of the expenses or received any of the profits." There was also evidence that the company to which the certificate had been issued never intended to have anything to do with the operation of the line and, in fact, induced the complaining party to forego having the certificate issued in the latter's own name. 336 Ill 617.

For the reasons given, the judgment order of the circuit court dismissing plaintiff's action for want of jurisdiction of the subject matter is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.