ROBERT CHARLES KLOPP, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.—ROBERT CHARLES KLOPP, Plaintiff-Appellant, *v.* THE PEOPLES GAS, LIGHT & COKE COMPANY, Defendant-Appellee.—MARVIN ROZNER, Plaintiff-Appellant, *v.* NORTHERN ILLINOIS GAS COMPANY, Defendant-Appellee.

First District (3rd Division)   Nos. 76-510 through 76-512 cons.

Opinion filed November 9, 1977.

Philip H. Corboy, of Philip H. Corboy & Assoc., and Lawrence Walner, both of Chicago (Sidney Z. Karasik, of counsel), for appellants.

Joseph M. Wells, Paul E. Goldstein, and Leslie P. Recht, all of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiffs, Robert Charles Klopp and Marvin Rozner, purporting to represent themselves and all others similarly situated, filed separate suits seeking injunctive and monetary relief against the defendants, Commonwealth Edison Company, The Peoples Gas, Light & Coke Company and Northern Illinois Gas Company. The plaintiffs appeal from orders of judges of the circuit court of Cook County dismissing their respective amended complaints. The three class actions have been consolidated for this appeal.

The primary claim common to the three actions is that the delayed payment charge included in each defendant's rate schedule is in essence a charge for interest which is in excess of the maximum allowed under the Illinois Interest Statute. (Ill. Rev. Stat. 1975, ch. 74, par. 1 *et seq.*) In each instance, the trial court dismissed the complaint on the grounds that exclusive jurisdiction over the subject matter of the dispute was vested in the Illinois Commerce Commission (hereinafter the "I.C.C."), and because the delayed payment charge was not "interest" within the meaning of the interest state.

Each complaint also alleged violations of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 1 *et seq.*) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1975, ch. 121½, pars. 311-317). The trial judges dismissed these counts for their failure to state a cause of action. Plaintiffs, however, have not appealed the orders of dismissal as to these counts.

In his suit against Commonwealth, the plaintiff Klopp alleged that during 1973 and 1974 he had purchased and paid for electricity supplied by Commonwealth. During that period some of the bills tendered by Commonwealth were paid after the due dates indicated on the bills. As a result, plaintiff was assessed and subsequently paid an additional amount called a "delayed payment charge" in accordance with Commonwealth's schedule of rates for "General Service". The applicable portion of this schedule provides:

"Delayed payment charge.

A delayed payment charge determined in accordance with the formula set forth below shall be applied to the amount of any bill rendered. . . if such bill is not paid within the net payment period, the expiration date of which appears on the bill:

8% of the first $10.00 or less per month of any bill

5% of any additional amount."

Plaintiff Klopp alleged that these late charges were, in fact, interest and, as such, were in excess of the maximum allowable under the statute. Plaintiff prayed for an injunction against the continued collection of this delayed payment charge and also for double damages for the collection of usurious interest as permitted under the statute. Klopp specifically charged that the cause of action did not involve a claim for reparations pursuant to section 72 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 76). Under that provision, the I.C.C. has the exclusive jurisdiction to hear and determine claims that rates charged by a utility are excessive. Klopp also alleged that no adequate remedy at law existed which would prevent Commonwealth's continued collection of the late payment charge. He charged that the I.C.C. had no jurisdiction to hear claims and assess damages under the interest statute, and that the I.C.C. expressly had condoned the collection of this charge by Commonwealth.

Klopp pleaded substantially similar facts in his complaint against Peoples Gas as he had in the Commonwealth complaint. The allegations of Rozner's complaint against Northern Illinois were virtually identical to the other two complaints.

As we have noted, the three judges dismissed the complaints. This appeal follows.

We first consider the contention of all three defendants that the subject matter of the complaints rests within the exclusive jurisdiction of the

I.C.C. If the trial judges were correct in so holding, we need not reach the issue of whether the delayed payment charges constituted interest.

Under section 60 of the Public Utilities Act (hereinafter the "P.U.A.") (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 64), the I.C.C. is empowered to conduct hearings concerning any matters relating to public utilities. Section 72 of that act authorizes the remedy of reparation to any customer who establishes that a utility has charged an excessive or unjustly discriminatory amount for its commodity or service. Where the claim relates to a rate charged by a utility, as defined by section 10—16 of P.U.A., this remedy consistently has been held to be exclusive. See *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 345 N.E.2d 785; *Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 340 N.E.2d 98; *Cummings v. Commonwealth Edison Co.* (1966), 64 Ill. App. 2d 320, 213 N.E.2d 18.

■■ Plaintiffs correctly point out that courts of this State have distinguished between claims for reparation under the P.U.A. and common law actions for compensatory and punitive damages. (*Malloy v. Illinois Bell Telephone Co.* (1973), 12 Ill. App. 3d 483, 299 N.E.2d 517; *Gowdey v. Commonwealth Edison Co.*) Plaintiffs further contend that the jurisdiction of the I.C.C. over the establishment of rates does not include authority to approve the assessment of a late charge by a public utility since such a charge is not within the definition of "rate" as provided in the P.U.A. Section 10—16 provides:

" 'Rate' includes every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility * * * or any schedule or tariff thereof, and any rule, regulation, charge, practice or contract relating thereto." (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 10.16.)

However, the essential nature of the relief requested and not the label attached to it will determine whether the action must be commenced before the I.C.C. See *Cummings v. Commonwealth Edison Co.*

■■ The P.U.A. represents a comprehensive scheme for the regulation of public utilities by the I.C.C. Our supreme court has held that the act supersedes the common law liability of the utilities as far as rates and unreasonable discrimination are concerned. (*Terminal R.R. Association v. Public Utilities Com.* (1922), 304 Ill. 312, 136 N.E. 797.) In view of the broad definition of the word "rate" found in the act and the clear legislative intent to vest exclusive jurisdiction over such matters in the I.C.C., we find that plaintiffs' claims are, in essence, that they were overcharged by the defendants. The proper form of relief, if any, is reparation under the act.

Support for this conclusion is found in *Cummings v. Commonwealth Edison Co.* (1966), 64 Ill. App. 2d 320, 213 N.E.2d 18. Plaintiff there filed a

class action alleging that the utility had paid excessive prices for equipment purchased from companies which had conspired to set the prices of the equipment in violation of Federal antitrust laws. Plaintiff alleged that these overcharges had been included in the utility's property and plant accounts which constituted a principal factor in determining the rates and charges paid by plaintiff. Plaintiff claimed that the class was entitled to a refund out of the money paid to the utility by the companies as a result of civil litigation. Affirming the trial court's dismissal of the complaint, the court stated at page 324:

"It is apparent that the sole basis for plaintiff's claim, irrespective of the label she chooses to employ, is that she and other customers were charged excessive rates for which she wants reparations."

So too, plaintiffs here essentially claim that the delayed payment charge is excessive. They do not take the position that any delayed payment charge is beyond the authority of a utility to assess, but urge that any such charge must bear a reasonable relation to the delinquent collection costs actually incurred by the utility. When so viewed, it is obvious that plaintiffs seek a refund and a reassessment of the reasonableness of the delayed payment charge. These functions are peculiarly within the jurisdiction of the I.C.C.

■■ We do not accept plaintiffs' additional contention that initial resort to the I.C.C. would be futile. Generally exhaustion of administrative remedies is required before a plaintiff may resort to the courts. (*Illinois Bell Telephone Co. v. Allphin* (60 Ill. 2d 350, 326 N.E.2d 737.) Although there is an exception where any request for relief from the administrative agency would be futile, we find the exception inapplicable here. Plaintiffs argue that resort to the I.C.C. would be futile because the delayed payment charges had been expressly approved by the I.C.C. This contention overlooks the fact that any rate or charge challenged as excessive under the act has been expressly approved by the I.C.C. There is no reason to assume that the I.C.C. will not be receptive to plaintiffs' claim if, in fact, the delayed payment charge is unreasonable.

As further support for their argument that resort to the I.C.C. would be futile, plaintiffs point to the I.C.C.'s inability to adjudicate a class action. It should be noted that the commencement of a class action does not automatically invoke equitable jurisdiction. Where an individual plaintiff has no cause of action, it necessarily follows that any attempted class action also must fail. (*De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759, 291 N.E.2d 329.) However this does not mean that plaintiffs, as a class, are left without a remedy. In fact, the record reveals that there is pending before the I.C.C. a complaint challenging Peoples Gas' delayed payment charges. (Sabur *et al* v. The Peoples Gas, Light & Coke Co., I.C.C. Docket No. 59141.) In *Sabur*, the complainants have proposed

changes in the delayed payment charge which would affect all the customers of Peoples Gas.

■■ Plaintiffs also urge that the 1970 revision of the Illinois Constitution considerably broadened the original jurisdiction of the circuit courts. They point to the language of article VI, section 9: "Circuit Courts shall have original jurisdiction over all justiciable matters * * *." Plaintiffs maintain that this grant of jurisdiction is virtually unlimited as compared to the jurisdictional language contained in the 1870 Constitution. However, the language of the 1970 Constitution remains unchanged from the 1962 revision of the 1870 Constitution. It is clear from the cases decided after the effective date of the 1962 revision that neither the 1962 nor the 1970 amendments affected the statutory grant of exclusive jurisdiction to the I.C.C. See *Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 340 N.E.2d 98.

For the reasons stated, the orders of the circuit court of Cook County dismissing plaintiffs' complaints are affirmed.

Orders affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.