JAMES F. FRIEDERICH *et al.*, Petitioners-Appellants, *v.*
ILLINOIS-AMERICAN WATER COMPANY, Respondent-Appellee.

Fifth District    No. 80-244

Opinion filed March 11, 1981.

HARRISON, J., dissenting.

Richard A. Degen, of Mascoutah, for appellants.

Pope & Driemeyer, of Belleville (Thomas W. Alvey, Jr., and Thomas F. Hennessy, III, of counsel), for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

This appeal results from the dismissal of plaintiffs' first amended

petition, in which they requested a mandatory injunction and actual and punitive damages from the defendant water company. In their petition, the plaintiffs alleged that they own property known as 1401 South Illinois Street in Belleville, abutting State Bond Issue Route 159 right-of-way; that such property is without water service; and that defendant provides water service to the area but has refused to service the property until the plaintiffs pay for the installation of a service pipe to connect the property with defendant's water main on the other side of Route 159. Plaintiffs attached to their complaint a copy of an Illinois Commerce Commission regulation which requires the installation, at the utility's expense, of service pipes to premises which abut streets, highways, or rights-of-way containing water mains.

On March 17, 1980, defendant filed a motion to dismiss, contending that plaintiffs have failed to pursue their remedies with the Illinois Commerce Commission. Defendant argues that plaintiffs' property is separated from Route 159 by a township road called Taft Street and that, as a consequence, defendant is not required to install a service pipe without charge.

Defendant's motion to dismiss was granted on May 14, 1980, and plaintiffs appeal from the order of dismissal, contending that Taft Street is actually owned by the State of Illinois, and the provisions of that I.C.C. regulation mentioned above apply here.

On appeal defendant raises two issues for determination by this court: (1) whether this controversy is a "rate dispute," which the legislature has entrusted to the Illinois Commerce Commission for resolution; and (2) if not, is injunction an appropriate remedy.

A determination of these issues requires construction of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 1 *et seq.*), hereafter referred to as "the Act."

Section 72 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 76) outlines the procedure to be used to resolve a rate dispute. It states, in pertinent part, that:

> "When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefore, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."

In the event the utility does not comply with that order, section 72 allows suit to be brought by the complainant, or others, for civil damages; and it is specified that such remedy "shall be cumulative, and in addition to any

other remedy or remedies in this Act provided in case of failure of a public utility to obey a rule, regulation, order or decision of the Commission."

Section 73 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 77) provides in part that:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, * * *."

Section 73 permits the recovery of punitive damages and declares that an action may be brought in the circuit court by any person or corporation.

Section 74 provides that the Act "shall not have the effect to release or waiver any right of action by * * * any * * * person or corporation for any right or penalty which may have arisen or accrued or may hereafter arise or accrue under any law of this State.

All penalties accruing under this Act shall be cumulative of each other, and suit for the recovery of one penalty shall not be a bar to or affect the recovery of any other penalty * * *." Ill. Rev. Stat. 1979, ch. 111 2/3, par. 78.

Notwithstanding the provisions of the Act, the decided cases uniformly have held that a claim for reparations based on unreasonable charges must first be filed with the Commerce Commission under the procedures of section 72. *Klopp v. Commonwealth Edison Co.* (1977), 54 Ill. App. 3d 671, 370 N.E.2d 822; *Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 340 N.E.2d 98.

The defendant estimates the cost of installation of the service pipe in question to be between $9,000 and $15,000 and urges us to find that plaintiffs' claim constituted a rate dispute, which must be brought before the Illinois Commerce Commission according to section 72 of the Act. Defendant relies on the definition of "rate" contained in section 10.16 of the Act, which states that the term " '[r]ate' includes every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility * * * or any schedule or tariff thereof, and any rule, regulation, charge, practice or contract relating thereto." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 10.16.) Defendant argues that the recovery sought by plaintiffs in the instant case presents a rate dispute because of the controversy over whether it is entitled to charge plaintiffs for the installation of a service pipe under the existing circumstances. Defendant relies on *Klopp v. Commonwealth Edison Co.* and *Dvorkin v. Illinois*

*Bell Telephone Co.* in support of its position. In *Klopp* the plaintiffs contended that a delayed payment charge contained in defendants' rate schedule was in essence an interest charge and that such charges were in excess of the maximum interest charge allowed under the Illinois Interest Act. The plaintiff in *Dvorkin* sought damages alleged to have resulted from defendants' practice of providing services for the personal use of its current, former, and retired officers, directors, and employees without charge or at less than its established rate. In both *Klopp* and *Dvorkin*, the court of review held that the controversy was a rate dispute which must first be submitted to the Illinois Commerce Commission.

Although we are of the opinion that the controversy in the case at bar is analogous to both *Klopp* and *Dvorkin* and also may be classified as a rate dispute, we conclude that there is a more fundamental consideration which dictates our affirming the trial court.

The obligations of defendant regarding the rendition of service are found in section 32 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 32), which provides in pertinent part:

> "Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable. * * *.

> All rules and regulations made by a public utility affecting or pertaining to its charges or service to the public shall be just and reasonable."

Section 10.15 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 10.15) defines service as follows:

> " 'Service' is used in its broadest and most inclusive sense, and includes not only the use or accommodation afforded consumers or patrons, but also any product or commodity furnished by any public utility and the plant, equipment, apparatus, appliances, property and facilities employed by, or in connection with, any public utility in performing any service or in furnishing any product or commodity and devoted to the purposes in which such public utility is engaged and to the use and accommodation of the public."

Further, in a commentary upon the origin and development of public utilities regulations in Illinois, it is stated that:

> "As a part of its authority over the rendition of utility service, the Commission has effective control over the commencement, extension and furnishing of such service, as well as the discontinuance and abandonment thereof * * *." (Ill. Ann. Stat., ch. 111 2/3, at XIX (Smith-Hurd 1966).)

Thus, the Public Utilities Act vests control of the extension of water service in the case at bar to the Commission.

Since the dispute involved in the instant appeal involves the interpretation and application of rules of the Illinois Commerce Commission regarding the extension of water service, we conclude that exclusive jurisdiction thereof is in the Commission. Neither party has sought to invoke the Commission's jurisdiction; therefore, the trial court properly dismissed plaintiffs' first amended petition.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE HARRISON, dissenting:

I respectfully dissent.

The appellee has characterized this action as one involving rate-making and based upon this premise rested its entire argument upon the well-established proposition that the Illinois Commerce Commission is endowed with original and exclusive jurisdiction regarding complaints concerning unjust or unreasonable rates. The majority does not disagree with this characterization of the facts. Its conclusion must follow from the rules regarding exclusivity of jurisdiction applicable to proceedings under section 72 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 76), which concerns reparation for overcharges. (*E.g., Medusa Portland Cement Co. v. Illinois Central R.R. Co.* (1936), 287 Ill. App. 549, 562-66, 5 N.E.2d 782.) However, I cannot agree with this crucial characterization of the facts as involving a rate dispute. *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 147-49, 345 N.E.2d 785.

The Illinois Commerce Commission is a creature of statute deriving its power and jurisdiction entirely therefrom, having no authority other than that expressly granted or necessarily inferable. (*Lambdin v. Commerce Com.* (1933), 352 Ill. 104, 106, 185 N.E. 221; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Commerce Com.* (1925), 315 Ill. 461, 477, 146 N.E. 606.) This statutory authorization is in derogation of the common law and is to be strictly construed (*Consumers Sanitary Coffee & Butter Stores v. Commerce Com.* (1932), 348 Ill. 615, 618, 181 N.E. 411); especially so in matters of jurisdiction. (See *Lambdin v. Commerce Com.* (1933), 352 Ill. 104, 108.) Because this matter patently has nothing to do with rate-making, exclusivity of jurisdiction has not been satisfactorily demonstrated by any argument which the appellees advance.

To the contrary, I find the Friederich's contention that section 73 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 77) is applicable to the facts of this case persuasive. On the basis of the pleadings alone it is established that plaintiffs allege the violation of an Illinois Commerce Commission regulation. We need look no further than the face of these pleadings for purposes of the determination of this dispute. Section 73 of the Act creates a statutory cause of action based upon the violation by a public utility of any rule or regulation promulgated by the Illinois Commerce Commission and permits the prosecution of such an action in the circuit court. (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 136, 383 N.E.2d 929.) As was stated in *Gowdey:*

> "[N]o rate making considerations are involved. In view thereof, we are of the opinion that the action was not for reparations but for damages for which, under section 73 of the Act, the court had subject matter jurisdiction." (37 Ill. App. 3d 140, 149.)

Therefore, I would vote to reverse the decision of the circuit court of St. Clair County, and remand for further proceedings.