GENERAL AMERICAN REALTY CO., INC., *et al.*, Plaintiffs-Appellees, *v.* CAROLYN S. GREENE *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 81-1171

Opinion filed June 29, 1982.—Rehearing denied August 4, 1982.

Steven N. Fritzshall, of Chicago (Fritzshall, Fritzshall & Bensinger, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Roger G. Fein, Malcolm S. Kamin, Donald I. Resnick, and Judy I. Byrd, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Defendants, Carolyn S. Greene, C. Greene Equipment Co. and Melrose Park National Bank, as trustee, appeal from an order denying their motion for summary judgment and from an order granting the motion for summary judgment of plaintiffs General American Realty Co., Inc. (General American), and Citizens Bank and Trust Company, as trustee (Citizens), and awarding injunctive relief pursuant to counts I, II and III of the fourth amended complaint. The issues raised on appeal include questions of jurisdiction; plaintiffs' damages; the presence or absence of material facts with respect to the granting of summary judgment; and whether certain contractual restrictions terminated with the delivery of the deed. For the following reasons we reverse that part of the trial court's order pertaining to defendants' alleged encroachment upon an underground water service line easement utilized for a master sprinkler system protecting plaintiffs' and other nearby business properties (sprinkler waterline easement), and affirm the balance of the order.

In 1962 defendants, who bought, refurbished and resold machinery and equipment, leased from Citizens the subject property, which was then improved with a building denominated "Building A," and a yard. On November 1, 1965, Citizens agreed to sell the subject property to Carolyn S. Greene, under an installment contract called "Articles of Agreement for Trustees' Deed" (Articles), composed of lots 4, 5, 6, 7 and 16 in Richardson Industrial Park, Melrose Park, Illinois (Greene Property). The

agreement expressly provided that the conveyance shall be subject to, among other things, building lines, utility zoning regulations, easements of record and building restrictions, as well as a public easement over the westerly 12′ of the premises for ingress and egress to water, sewer, electric and telephone lines beneath or above the surface. The purchaser was required to pay her pro rata cost of making and maintaining roadway improvements and agreed to refrain from using the unenclosed vacant portion of the property for storage of personal property so that no such storage property could be viewed from surrounding premises. A 5′ utility easement runs north and south through the approximate center of the Greene Property.

In 1967, defendants erected an addition to their property, shown as "Building C" on the plat of survey, with the approval of General American's president. The structure lies directly above a portion of the underground sprinkler waterline easement running north and south through the Greene Property, just east of the 5′ utility easement. On June 5, 1969, defendant executed an agreement granting Citizens, its successors and assigns, an easement and right to go upon the premises for purposes of repairing and maintaining the underground sprinkler waterline and above surface sprinkler equipment, among other things.

After various disputes between them, on March 10, 1975, the parties executed a document labeled "Supplemental Articles of Agreement" (Supplemental Articles) wherein defendants acknowledged the existence of the subject easements and agreed to certain other conditions, which will be described and discussed later. Both the Articles and the Supplemental Articles were recorded in the office of the recorder of deeds of Cook County. Subsequently, the Greene Property was conveyed to defendant Melrose Bank as trustee by Citizens through a series of warranty deeds and nominee deeds in trust recorded in the office of the recorder of deeds of Cook County on May 4, 1976.

In June 1977, defendants began erecting a 32′ x 48′ building on lot 4 of the Greene Property, "Building B", directly over part of the 5′ utility easement. Soon after construction of this building began, plaintiffs notified defendants that the building was being constructed over the 5′ utility easement and demanded that the obstruction be removed. The construction continued and plaintiffs filed their first complaint in August 1977. At a deposition hearing, John Greene, office manager of C. Greene Equipment Co., testified that he picked the location of the building knowing that a utility easement ran through the property at that point. At no time prior to the commencement of construction did he request permission to build or for a release of the utility easement from plaintiffs. He informed the builder, Eck & Sons, that there was a utility easement that went through the proposed site, but that he was going to get releases for

it. In September and October of 1977, defendants obtained releases of all right, title and interest in the 5' utility easement from various public utility companies, but not from Citizens.

## I

Defendants contend that because the Illinois Commerce Commission (Commission) was given general supervision of all public utilities for which the easement was reserved, the trial court lacked jurisdiction to award injunctive relief with regard thereto without initial Commission action, relying upon the companion doctrines of exhaustion of remedies and primary jurisdiction. Both doctrines are concerned with developing proper relationships between the courts and administrative agencies charged with particular regulatory duties. (*United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 1 L. Ed. 2d 126, 77 S. Ct. 161.) Under the exhaustion doctrine, a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357-58, 326 N.E.2d 737.) Although the reasons for this rule have been variously stated, it is intended to allow administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before resort to judicial relief may be pursued. (*Kenilworth Insurance Co. v. Mauck* (1977), 50 Ill. App. 3d 823, 365 N.E.2d 1051.) Exhaustion, however, is not required if the administrative remedy is inadequate (*Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 641, 415 N.E.2d 1206), or where the agency lacks jurisdiction. (*Miller v. Department of Public Aid* (1979), 69 Ill. App. 3d 477, 480, 387 N.E.2d 810.) The doctrine of primary jurisdiction applies where a claim is originally cognizable in courts, but where enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. *United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 63-64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165; *Chicago & Eastern Illinois R.R. Co. v. Martin Bros. Container & Timber Products Corp.* (1980), 87 Ill. App. 3d 327, 334, 408 N.E.2d 1031.

■■ Defendants contend that the instant controversy was subject to the jurisdiction and review of the Commission, citing sections, *e.g.*, 8a, 10—15, 27(c), 32 and 68 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, pars. 8a, 10.15, 27(c), 32 and 72), emphasizing in particular that the easement releases executed by the public utility companies were subject to administrative review. Defendants' reliance on these releases is misplaced; their existence does not affect plaintiffs' rights as owners of the dominant estate or their authority to enforce those rights in courts. The easement could only be released by owners of the dominant estate

for whose benefit the easement was created. See *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 390, 192 N.E.2d 384.

■■ None of the statutory provisions or cases cited by defendants (*e.g., Cable Television Co. v. Illinois Commerce Com.* (1980), 82 Ill. App. 3d 814, 403 N.E.2d 287; *Friederich v. Illinois-American Water Co.* (1981), 94 Ill. App. 3d 172, 418 N.E.2d 836) suggest that the Commission has jurisdiction over a dispute between private parties concerning the terms of an easement created pursuant to contract, and purported violations thereof. Since the Commission lacks subject matter jurisdiction over the controversy, the companion doctrines of exhaustion and primary jurisdiction are without application. (*Miller v. Department of Public Aid* (1979), 69 Ill. App. 3d 477, 480; see *People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 485-86, 427 N.E.2d 1226.) Further, this is not a dispute raising issues outside the conventional experience of judges or requiring the exercise of specialized administrative discretion (*Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 642), nor is there an adequate administrative remedy available to plaintiffs. Defendants' suggestion that the Commission may be able to order the utilities to retract the releases or to establish a new utility easement or plan to insure future utility service misses the mark. A retraction of the easement waivers by the utilities could not affect plaintiffs' interest in the easement. The trial court properly exercised jurisdiction over the controversy.

## II

The trial court found that defendants obstructed and encroached upon the 5′ utility easement by placing and storing inventory, equipment and other material on the easement and by constructing "Building B" on and over the easement. Defendants and their successors and assigns were ordered to: permanently remove all material which in any way encroached upon or obstructed access to use, repair or maintenance of this easement; refrain from obstructing the utility easement; and, to permanently remove all portions of "Building B" constructed over the easement. The finding is amply supported by the record. In paragraph 3 of the Supplemental Articles, defendants agreed that the utility easement should not be used for the storage of any inventory, the operation of the business, or in any way cause any use which would obstruct easy and immediate access to the easement. Defendants chose the construction site for "Building B" knowing that a utility easement existed underneath it. Earl and John Greene conceded in effect that inventory and machinery also have been stored upon this easement from time to time.

■■ Defendants maintain that plaintiffs were not entitled to injunctive relief for the encroachment on the utility easement because they failed to demonstrate factually that their use and enjoyment has been or soon will

be impaired. Defendants observe that there is almost no evidence in the record as to the extent of defendants' injury due to any obstruction of their future need of the easement. The absence of facts on this issue is immaterial. An award of injunctive relief under the circumstances presented does not require proof of substantial injury from the encroachment. (*Hartman v. Wells* (1912), 257 Ill. 167, 100 N.E. 500; *Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 253, 380 N.E.2d 1194.) A court of equity may properly compel removal of an encroaching building in accordance with the express terms of the easement regardless of the relative hardship involved where, as here, such encroachment was deliberate. (*Ariola v. Nigro* (1959), 16 Ill. 2d 46, 51-52, 156 N.E.2d 536; *Keesen v. Zarattini* (1969), 119 Ill. App. 2d 284, 256 N.E.2d 377.) Since defendants constructed "Building B" knowing that it was directly above the easement, without seeking prior approval of the holder of the dominant estate, injunctive relief was properly granted. 16 Ill. 2d 46, 51-52.

## III

The trial court found that defendants obstructed and encroached upon the sprinkler waterline easement described in the Supplemental Articles by placing and storing inventory, machinery and other material on the easement and by constructing "Building B" upon it. Defendants were ordered to: immediately and permanently remove all inventory, machinery and material which in any way encroaches upon or obstructs access to the sprinkler waterline easement; refrain from obstructing the easement; and, permanently remove all portions of the building which in any way encroach upon the said easement. Defendants maintain that the trial court should not have granted plaintiffs' motion for summary judgment as to this issue, since a material question of fact exists as to whether defendants actually encroached on the sprinkler waterline easement.

In the Supplemental Articles, Greene expressly agreed "that the said hydrant locations, stand-pipe locations and the underground water service lines for the master sprinkling system shall be readily, easily, and unobstructed for easy access for use, service, and maintenance." At his deposition, Earl Greene stated that in recent years there has been approximately a 10' path above the sprinkler waterline easement where no inventory is stored. John Greene at one point in his deposition stated that there was a 5' path above the sprinkler waterline easement where no equipment was stored. Later, John stated that they temporarily and occasionally stored inventory and equipment over that easement, but that in recent years the hydrant locations, stand-pipe locations and the underground service line for the master sprinkling system were readily, easily

and unobstructedly available for easy access for use, service and maintenance.

■■ That deposition testimony left unsatisfactorily resolved the material question of whether defendants stored equipment and inventory in such a manner as to obstruct easy access for use, service and maintenance of the sprinkler system and whether the location of "Building B" itself so obstructed the easement. According to John Greene, only a 5' wide path need be maintained over the sprinkler line easement, or 2½' on either side of the easement. His testimony by itself is not dispositive on the issue of how close the building could be to the waterline without obstructing ready and easy access to it. Assuming that the building had to be located at least 2½' from the easement, it is unclear from the plat of survey and the deposition testimony whether the building location was compatible with this range. A genuine issue of material fact thus exists as to whether the building does encroach upon the sprinkler line easement and summary judgment should not have been entered as to this question. *Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 392 N.E.2d 1352, *aff'd* (1981), 85 Ill. 2d 161.

## IV

The trial court found that defendants violated the Supplemental Articles by, among other things: using the public roadways and right-of-way easements for the operation and performance of their business activity; conducting their business so that it encroaches beyond defendants' property; piling inventory above and outside the 8' fence defendants agreed to construct around their property; allowing the fence to become battered; and otherwise conducting their business in a manner which creates an unsightly and dangerous condition that is readily visible from adjoining properties. Defendants were ordered to permanently maintain in good and sightly condition an 8' fence around the perimeter of the Greene property. They were permanently enjoined, *inter alia*, from operating their business in a manner which obstructs and prevents access to any right-of-way easements and public roadways, and operating their business in an unsightly and dangerous manner, including the storing of any inventory outside of and above the height of the 8' fence.

Defendants maintain that the trial court erred in granting the foregoing injunctive relief because a material question of fact remained regarding the extent and character of the defendants' alleged encroachments. Both John and Earl Greene stated that parts of the 8' fence were in bad condition and that occasionally some pieces of inventory were piled above it. The photographs introduced into evidence clearly show the battered and unsightly condition of portions of the fence and the accumulation of inventory above its 8' height on various days. Such a

violation was not *de minimus* as defendants contend. *Hartman v. Wells* (1912), 257 Ill. 167, 173.

■■ In paragraph 4 of the Supplemental Articles, defendants agreed to "conduct, maintain, and perform the operation of its business within the confines of the property lines * * * and refrain for any period of time from any operation beyond its property lines which constitute an encroachment." They also agreed, in paragraph 6, not to "employ public road ways, utility easements or right-of-way easements for the operation and performance of its business activity." Both Greenes conceded that the access road to the west of the Greene Property from time to time is used to load and unload machinery from trucks with the help of a crane. Pictures were introduced showing defendants' crane on this roadway in the operation and performance of their business. The finding that they thereby violated the Supplemental Articles was thus supported by the evidence. The award of injunctive relief here cannot be held erroneous.

V

Defendants contend that the restrictions contained in the Supplemental Articles terminated upon the delivery of the deed to defendants. Defendants note that the consideration described in the Supplemental Articles refers to the forebearance to declare a forfeiture against defendants. The restrictions on use and occupancy, defendants observe, were excerpted from "boilerplate" mortgage language selected at random, and are similar to the restrictions in the Supplemental Articles. Defendants argue that the intent of both documents is to provide security to the lender that the premises will be kept in proper condition until the purchase price has been tendered.

■■ In construing a deed, the intent of the parties as revealed by the provisions of the instrument must be ascertained. (*Deverick v. Bline* (1949), 404 Ill. 302, 306, 89 N.E.2d 43.) That restrictions at issue here were intended to survive the delivery of the deed is demonstrated by the specific exceptions enumerated in the deed itself, which made it subject to: "1. Building restrictions of record and building lines; conditions and covenants of record as to use and occupance [*sic*], zoning laws and ordinances. * * * 3. Public and private roads and highways. * * * [and] 4. Easements for public ingress and egress and easements for public utilities." Additionally, the conveyance of the Greene Property was expressly made subject to "other conditions, restrictions, grants, and easements of record," among which are the restrictions set forth in the Supplemental Articles which were recorded prior to recordation of the deeds. We find no error in the trial court's order in this respect.

For the reasons aforesaid, we affirm the order as to jurisdiction, summary judgment for plaintiffs as to the 5' utility easement violation,

operation and performance of business activities, fencing and storage restrictions and the issue of merger of said restrictions in the deeds conveying the property to defendants. We also affirm the denial of defendants' motion for summary judgment, which was addressed to the issue of jurisdiction, decided adversely to defendants under Point I of this opinion. We reverse summary judgment for plaintiff as to the issue of obstruction and encroachment by defendants upon the sprinkler water-line easement and remand this issue for trial.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with the views herein expressed.

DOWNING and PERLIN, JJ., concur.