Gerald R. Adler, Plaintiff-Appellant, v. Northern Illinois Gas Company, Defendant-Appellee.

Gen. No. 49,901.

First District, First Division.

March 15, 1965.

Rehearing denied April 26, 1965.

Harry R. Booth, of Chicago (Bernard Allen Fried, of counsel), for appellant.

Isham, Lincoln & Beale, of Chicago (Justin A. Stanley, Robert A. Helman and David L. Lange, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a class action, in which plaintiff, a customer of defendant, Northern Illinois Gas Company, brought an action on behalf of all customers of defendant in the Circuit Court of Cook County, seeking (1) a declaratory judgment determining the rights of defend-

ant's customers under the Natural Gas Act (Title 15 USC § 717ff) and the public utility laws of Illinois; and (2) an accounting for a large sum of money by which, plaintiff alleges, defendant fraudulently enriched itself through the sale of natural gas to its customers. The trial court dismissed the action for want of jurisdiction over the subject matter of the action and denied leave to amend the complaint. Plaintiff appeals.

Plaintiff's complaint, in substance, contains allegations grounded on plaintiff's basic theory of the instant action, which is:

(1) Congress, by the enactment in 1938 of the Natural Gas Act, providing for the regulation of natural gas, intended the ultimate gas consumers of the nation to be the primary beneficiaries of "a dual system of regulation of the natural gas industry which would protect the consumers against exploitation and windfall profits arising out of the sale of such gas to ultimate users."

(2) Defendant's business is devoted almost entirely to the purchase and resale of natural gas to ultimate consumers in Illinois.

(3) Defendant's sworn statements disclose returns from 9% to over 10%, whereas "the FPC [Federal Power Commission], in carrying out the program of Congress under the Natural Gas Act has repeatedly held interstate natural gas companies shall not make large windfall profits or exploit the consumers, by limiting their return to 6% or 6½%. Since Northern resells such natural gas, it has no greater right to windfall profits than have pipeline companies." Defendant's profits are "tantamount to a fraud upon its customers."

(4) The Natural Gas Act is in pari materia with the Illinois utility laws. Northern's duties to its customers and their rights depend upon the provisions

213

and purposes of both statutes. The mandate to carry out the common purposes of federal and state laws does not rest only with administrative agencies, but it is also imposed upon the courts. Equity courts in Illinois should entertain plaintiff's complaint because "they are the only agency which can prohibit Northern from retaining its windfall profits."

(5) Plaintiff properly filed no complaint with the Illinois Commerce Commission because "50 years of history of Illinois utility regulation apparently discloses no precedent for lower rates obtained by individual consumers against large utilities. Such remedy has become largely a fiction or illusion."

Defendant's motion to dismiss, filed pursuant to section 48 of the Illinois Civil Practice Act, alleges the court does not have jurisdiction of the subject matter of the action because it "is one over which the Illinois Commerce Commission has exclusive jurisdiction by reason of 'An Act Concerning Public Utilities' (Ill Rev Stats 1961, c 111⅔, § 1 et seq.), and plaintiff has not utilized or exhausted his remedies before the Illinois Commerce Commission. Said jurisdictional defect cannot be removed by transfer of the case to any other court."

An affidavit in support of defendant's motion to dismiss alleges that on January 16, 1954, after notice and hearing in an adversary proceeding, the Illinois Commerce Commission entered an order "approving the rates to be charged by Northern Illinois from and after February 1, 1954," and also approved a "purchased gas cost adjustment clause" under which the rates of defendant "are automatically increased or lowered as prices paid by Northern Illinois to interstate pipeline suppliers for natural gas are raised or lowered."

The supporting affidavit also includes a certified copy of a "Declaration of Exemption," entered on

July 25, 1956, by the Federal Power Commission, which administers the Natural Gas Act. This "Declaration" shows that "upon the basis of the application filed, the exhibits appended thereto, and the files of the Commission, it appears that" defendant purchases interstate natural gas at points within the State of Illinois, and all natural gas received by defendant is ultimately consumed within the State of Illinois, and that "the Illinois Commerce Commission has certified to the Federal Power Commission that it has and is exercising regulatory jurisdiction over the rates, service and facilities of Applicant."

By reason of the foregoing, the Federal Power Commission declared, "Northern Illinois Gas Company is exempt from the provisions of the Natural Gas Act, and the orders, rules and regulation of this Commission issued pursuant thereto."

The order of the trial court recites that the court considered the complaint, the motion to dismiss and affidavit in support, plaintiff's counteraffidavit, interrogatories and answers, briefs from both parties, heard an oral argument, and, being fully advised in the premises, ordered "that this action be . . . dismissed for want of jurisdiction of the Court over the subject matter of the action, and that no declaratory judgment, as prayed for in the Complaint, be granted because of the want of jurisdiction of the Court over the subject matter of the action." The order also denied leave to amend the complaint, "finding that there is no basis upon which an amendment would result in this Court having jurisdiction over the subject matter of this action."

We agree with plaintiff that "Congress contemplated a harmonious, dual system of regulation of the natural gas industry—federal and state regulatory bodies operating side by side, each active in its own sphere" (Public Utilities Commission v. United Fuel

Gas Co., 317 US 456, 467 (1943)), and that " 'the primary aim of this legislation was to protect consumers against exploitation at the hands of natural gas companies.' The scheme was one of cooperative action between federal and state agencies." (Panhandle Pipeline Co. v. Public Service Commission, 332 US 507, 520 (1947).) Also, that "the Act was so framed as to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." Atlantic Refining Co., et al. v. Public Service Commission of N. Y., et al., 360 US 378, 388 (1959).

 We also agree that "the principle that the federal and state statutes relating to the regulation of natural gas are to be considered together for the purpose of providing effective protection of the consumer is supported by state court rulings. There is ample authority in state court decisions that federal and state statutes dealing with the same general subject, including common carriers, are to be construed together and are therefore in pari materia." Also, "where state and federal statutes deal with the same subject matter, weight should be given by a Court to interpretation of the federal laws and the two statutes constitute a common program to carry out a public purpose requiring co-operation by both." (Commonwealth Life & Accident Ins. Co. v. Board of Review of Dept. of Labor, 414 Ill 475, 480, 111 NE2d 345 (1953); Chesapeake & O. R. Co. v. Public Service Commission, 81 SE2d 700, 710 (1953).) A discussion of the foregoing statements is not required, because we do not believe they are in issue here.

We agree with plaintiff that "the common public purpose of state and national legislative action cannot be achieved without the cooperation of both" state and national authorities. We think that the "Declaration of Exemption," issued by the Federal Power Commission on July 25, 1956, was a manifestation of this co-

216

operation, and a recognition of the purpose of section 717(c) of the Natural Gas Act:

> "The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States."

The "Declaration" specifically mentioned that "the Illinois Commerce Commission has certified to the Federal Power Commission that it has and is exercising regulatory jurisdiction over the rates, service and facilities of Applicant." Section 717(c) of the Natural Gas Act provides that such a certification "shall constitute conclusive evidence of such regulatory power or jurisdiction."

Section 72 of the Illinois Public Utilities Act (Ill Rev Stats 1963, c 111⅔, ¶ 76) provides:

> "When complaint has been made to the [Illinois Commerce] Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."

█ This statutory remedy has consistently been held by Illinois courts to be the exclusive remedy to recover reparations for unreasonable charges by public utilities, superseding all *common law* actions for reparation (Alton Brick Co. v. Alton Water Co., 42 Ill App2d 451, 192 NE2d 599 (1963); Colton v. Commonwealth Edison Co., 349 Ill App 490, 498, 111 NE2d 363 (1953)), and a pending decision by the Illinois Com-

merce Commission has been held sufficient to preclude the granting of *equitable* relief. (American Generator & Armature Co., Inc., v. Commonwealth Edison Co., 298 Ill App 192, 18 NE2d 735 (1939).) The Illinois Commerce Commission has exclusive jurisdiction over complaints of excessive rates charged by public utilities, and the courts have jurisdiction over these matters only upon administrative review of the decisions of the Commission, that is, only after utilization and exhaustion of the remedies available before the Commission.

■ Because the plaintiff here has chosen to by-pass the Commission, thus ignoring the procedure prescribed by statute for the prosecution of such claims, the trial court was without jurisdiction to grant him relief. Until plaintiff has utilized or exhausted his remedies before that Commission, the Circuit Court is "without jurisdiction of the subject matter," save on administrative review. Ill Rev Stats 1963, c 111⅔, ¶ 72; Peterson v. Domestic Utility Services Co., 33 Ill App2d 374, 377–378, 179 NE2d 444 (1961).

The plaintiff contends, however, that defendant's profits for the 15-month period involved were so great as to be tantamount to fraud upon its customers and, therefore, fraud having been alleged, a court of equity has jurisdiction regardless of the usual necessity for the exhaustion of administrative remedies.

■■ We do not believe that plaintiff's complaint alleged sufficient facts to support its general allegations of fraud. As said in Owens v. Green, 400 Ill 380, 81 NE2d 149 (1948):

> "It is not enough to merely use the terms 'fraud' or 'fraudulently' for the adequate reason that the unexplained use of these terms alleges nothing. When used, as here, they are generally deemed expletives—words of abuse. . . . An allegation of

conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion and is not good pleading. These general words, unsupported by facts, are, at best, mere vituperation."

■■■ The defendant's motion to dismiss only admitted the facts which were well-pleaded in the complaint, not the plaintiff's conclusions or inferences of fraud. Skidmore v. Johnson, 334 Ill App 347, 357, 79 NE2d 762 (1948).

■■■ We are *not* persuaded that because defendant's earnings for the 15-month period here involved were in excess of 6% or 6½% on defendant's original cost of property, less depreciation reserve, these earnings are "tantamount to a fraud upon its customers." The plaintiff's allegations that these "excessive and extortionate" rates were "known" to be such by defendant, and that defendant "conspired" to deprive plaintiff and other customers of a hearing to determine the reasonableness of its rates by "inducing" the Illinois Commerce Commission not to hold such hearings, do not and cannot, in the absence of specific supporting facts, sustain plaintiff's theory that defendant's earnings and profits are "tantamount to a fraud upon its customers."

Plaintiff further contends that the trial court "acted arbitrarily in refusing to permit even a single amendment to the complaint," contrary "to the letter and spirit of Section 46 of the Illinois Practice Act."

■■■■ In allowing amendments to pleadings, a trial court has "a judicial discretion, which is subject to review, and one which should be exercised liberally in favor of the allowance of such amendments whenever essential to the proper presentation of a party's

cause of action or defense." (Delfosse v. Kendall, 283 Ill 301, 305, 119 NE 346 (1918).) The trial judge has broad discretion in permitting or refusing amendments, and only a manifest abuse of such discretion will be reviewed. (Lowrey v. Malkowski, 20 Ill2d 280, 285, 170 NE2d 147 (1960).) In the instant case, we agree with the trial judge that the record does not demonstrate any basis upon which an amendment would result in the trial court having jurisdiction over the subject matter of this action. We find no error here—"justice is not served by fruitless expenditure of time and effort by our courts, their officers and litigants." Deasey v. Chicago, 412 Ill 151, 157, 105 NE2d 727 (1952).

In conclusion, we find that the trial court was correct in determining that it was not presented with a proper cause of action for a declaratory judgment "determining the legal rights of the plaintiff" and of the customers of defendant, "arising out of the Natural Gas Act . . . and its relationship to the . . . [Public Utilities Act] and other relevant laws of . . . Illinois." Public utility rate-making matters and questions of profits are to be resolved by resort, in the first instance, to the Illinois Commerce Commission, following the administrative procedures prescribed by the legislature. Until these prescribed statutory procedures are exhausted, such matters are not a subject for court action. Ill Rev Stats 1963, c 111⅔, § 72.

For the reasons given, the order of the Circuit Court dismissing plaintiff's action for want of jurisdiction of the subject matter is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.