KIMBERLY A. SUTHERLAND, Plaintiff-Appellant, v. ILLINOIS BELL *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—91—3540

Opinion filed September 28, 1993.

Kimberly A. Sutherland, of Chicago, appellant *pro se.*

Victoria Bush-Joseph, of Chicago, for appellee Illinois Bell.

Jones, Ware & Grenard (Mitchell Ware, Frank M. Grenard, and Diane McCollough, of counsel) and Lois Lipton, both of Chicago, for appellee AT&T.

JUSTICE SCARIANO delivered the opinion of the court:

On July 24, 1989, plaintiff Kimberly A. Sutherland, an attorney, brought a two-count complaint against defendants Illinois Bell (Bell) and AT&T, requesting injunctive relief and damages grounded on charges that they had provided her with inadequate telephone service. After defendants filed a motion to dismiss her complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) for failure to state a cause of action, plaintiff sought leave to file an amended complaint against Bell and AT&T, as well as to add a new defendant, the Illinois Commerce Commission (ICC).

Count I of plaintiff's proposed amended complaint prayed for a declaratory judgment against Bell and the ICC, requesting that the court either determine that the ICC had jurisdiction over her action or enjoin Bell from disconnecting her telephone service while her case was pending. Count II charged Bell with various breaches of contract, but at oral argument before this court, plaintiff scaled down that claim to an "inside wire service" which she was charged for but was never ordered, provided, or removed from her bill upon request. Count III sought injunctive relief and damages in tort against Bell for intentional infliction of emotional distress, claiming that Bell threatened to disconnect her phone service if she did not pay certain disputed charges. Count IV requested injunctive relief against Bell in behalf of plaintiff and all persons similarly situated, alleging violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 et seq.). The "second count IV"[1] of the proposed amended complaint requested injunctive relief and damages against AT&T for breach of contract, specifically alleging that AT&T charged her for defective telephones and that it improperly installed telephone jacks in her law office. Count V sought damages and injunctive relief in

---

[1]Due to a typographical error, plaintiff's amended complaint contains two count IV's. We give it the same designation assigned to it by the parties.

tort against AT&T for intentional infliction of emotional distress, claiming that AT&T threatened to disconnect her telephone service when she refused to pay disputed charges. Finally, count VI, based on the Consumer Fraud Act, sought injunctive relief against AT&T in behalf of herself and all persons similarly situated.

Both Bell and AT&T objected on several grounds to plaintiff's motion for leave to file her proposed amended complaint, but on June 27, 1990, the court granted her motion, although it denied her leave to add the ICC as a defendant. Thereafter, on August 22, 1990, AT&T moved to dismiss counts V (intentional infliction of emotional distress) and VI (consumer fraud), invoking section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615); AT&T also answered the "second count IV" of the amended complaint (breach of contract) and filed a counterclaim on that same date. On May 23, 1991, Bell moved to dismiss counts I through IV of plaintiff's first amended complaint.

On September 16, 1991, the trial judge issued a memorandum of opinion wherein she held that the ICC had exclusive jurisdiction over plaintiff's contract claims against Bell and AT&T. The judge also held, as a matter of law, that plaintiff's first amended complaint did not state a cause of action for intentional infliction of emotional distress, while saying nothing at all of plaintiff's consumer fraud counts. The memorandum of opinion concluded by stating that "plaintiff's motion to file her First Amended Complaint is hereby denied and plaintiff is advised to pursue her administrative remedies."

On October 23, 1991, plaintiff presented a "motion to clarify" the trial court's memorandum of opinion, specifically alleging that since AT&T was a private company, it was not subject to ICC regulation, and calling to the court's attention the fact that the opinion made no mention of her consumer fraud counts. That same day, the trial court denied her motion to clarify and dismissed with prejudice her cause of action. On November 1, 1991, plaintiff filed her notice of appeal from the order entered on October 23.

I

AT&T first maintains that we do not have jurisdiction over this appeal because plaintiff's notice of appeal was filed on November 1, 1991, more than 30 days after the trial court's issuance of its memorandum of opinion on September 16, 1991. In essence, AT&T argues that although the trial court's memorandum of opinion did not state that it was dismissing plaintiff's first amended complaint with

prejudice, it was nonetheless a final and appealable order as the substance of the opinion did in fact dismiss the case with prejudice, and plaintiff could not extend the time to appeal by filing its "motion to clarify."

■ We do not agree. It is well settled that the dismissal of a complaint is generally not final and appealable unless the order states that it is "with prejudice" or in some other way indicates that the litigation is terminated and the plaintiff will not be permitted to replead. *McMann v. Pucinski* (1991), 218 Ill. App. 3d 101, 106, 578 N.E.2d 149, 153; *J. Eck & Son, Inc. v. Reuben H. Donnelley Corp.* (1989), 188 Ill. App. 3d 1090, 1093, 545 N.E.2d 170, 172; *Ben Kozloff, Inc. v. Leahy* (1986), 149 Ill. App. 3d 504, 506, 501 N.E.2d 238, 240; *O'Hara v. State Farm Mutual Automobile Insurance Co.* (1985), 137 Ill. App. 3d 131, 133-34, 484 N.E.2d 834, 836.

In the case at bar, the September 16 memorandum of opinion cannot be considered final and appealable for the reason that it did not even state that the court was dismissing the first amended complaint, let alone that it was dismissing plaintiff's entire cause of action with prejudice. Instead, the opinion denied plaintiff's motion to file her first amended complaint and "advised [her] to pursue her administrative remedies." While it is true that the court held it did not have jurisdiction over plaintiff's contract claims—a fair implication that it was dismissing those counts—it did not similarly imply that plaintiff could not replead the intentional infliction of emotional distress counts; and plaintiff's consumer fraud counts were not even addressed. It is axiomatic that an order which disposes of some but not all claims in a complaint cannot be final and appealable absent a finding by the trial court that there is no just reason to delay enforcement or appeal of the judgment. (134 Ill. 2d R. 304(a); *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440, 490 N.E.2d 1252, 1254; *Arachnid, Inc. v. Beall* (1991), 210 Ill. App. 3d 1096, 1102, 569 N.E.2d 1273, 1276.) Accordingly, we hold that the September 16 memorandum of opinion was not an appealable order and that we have jurisdiction of plaintiff's timely appeal from the October 23 order dismissing with prejudice her first amended complaint.

## II

"The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief." (*Kolegas v. Heftal Broadcasting Corp.* (1992), 154 Ill.

2d 1, 9, 607 N.E.2d 201, 205.) When the sufficiency of a complaint is challenged by a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom (*Kolegas*, 154 Ill. 2d at 9, 607 N.E.2d at 205); and the reviewing court must determine whether the allegations therein, when viewed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505, 565 N.E.2d 654, 657.) However, a motion to strike a complaint does not admit conclusions of law or fact unsupported by specific factual allegations upon which such conclusions rest (*Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657); and while pleadings are to be construed liberally (Ill. Rev. Stat. 1991, ch. 110, par. 2—603(c)), "a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and *** such deficiency may not be cured by liberal construction or argument." *In re Beatty* (1987), 118 Ill. 2d 489, 500, 517 N.E.2d 1065, 1070.

� The determination of whether a complaint sufficiently states a cause of action so as to survive a 2—615 challenge involves a two-step process, as stated in *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005:

"To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed." *Fahner*, 88 Ill. 2d at 308, 430 N.E.2d at 1009.

Before addressing the substance of plaintiff's cause of action under these guidelines, we must first determine whether she has elected to stand on her first amended complaint. The general rule in this State is that where the trial court dismisses with prejudice a plaintiff's complaint, a failure to request leave to file a new complaint before appealing constitutes an election to stand on the dismissed complaint, and the cause of action must stand or fall on the facts alleged therein. *Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153, 85 N.E.2d 682, 685; *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 109, 45 N.E.2d 20, 22; *Stamp v.*

*Touche Ross & Co.* (1993), 263 Ill. App. 3d 1010, 1019; *Wieseman v. Kienstra, Inc.* (1992), 237 Ill. App. 3d 721, 722, 604 N.E.2d 1126, 1128, *appeal denied* (1993), 148 Ill. 2d 654, 610 N.E.2d 1276; *Beasley v. St. Mary's Hospital* (1990), 200 Ill. App. 3d 1024, 1028, 558 N.E.2d 677, 680, *appeal denied* (1990), 135 Ill. 2d 554, 564 N.E.2d 835; *Robbins v. City of Madison* (1990), 193 Ill. App. 3d 379, 381, 549 N.E.2d 947, 948; *Sweis v. City of Chicago* (1986), 142 Ill. App. 3d 643, 649, 491 N.E.2d 1342, 1346; *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 917, 445 N.E.2d 1240, 1243; see 3 R. Michael, Illinois Practice §27.5, at 512 (1989).

■ In the instant case, the trial judge initially granted plaintiff leave to file her first amended complaint. However, after Bell and AT&T filed motions to dismiss that complaint, the trial court apparently reconsidered, and in its memorandum of opinion it denied plaintiff leave to file her first amended complaint even though it had already been filed pursuant to a previous court order which does not appear to have been formally vacated or set aside. Plaintiff, understandably confused, asked the court for a clarification of its memorandum of opinion; the court responded, however, by entering an order dismissing with prejudice her first amended complaint, and plaintiff has appealed from that order.

Although we find this to be a rather unusual sequence of events, we deem it to be clear that plaintiff has elected to stand on her first amended complaint. Once it became clear that her cause of action was dismissed, plaintiff was required to seek leave to file a second amended complaint before appealing if she chose not to stand on her dismissed complaint. (*Mlade*, 112 Ill. App. 3d at 917, 445 N.E.2d at 1243 ("[A]lthough the trial court struck the complaint and dismissed the lawsuit, plaintiffs never asked for leave to file an amended complaint. As a result, their cause of action stands or falls based on the sufficiency of that pleading").) Accordingly, we conclude that the viability of plaintiff's cause of action must be determined solely on the basis of the averments of her first amended complaint.

## III

The first issue presented on the merits is whether the court properly dismissed counts I, II and the "second count IV" of plaintiff's first amended complaint, all of which allege breach of contract claims against Bell and AT&T, on the ground that the ICC has exclusive jurisdiction of them under section 9—252 of the Public Utili-

ties Act (Act) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 9—252).[2] We have held without exception that under that section, the ICC has exclusive original jurisdiction over a complaint which relates to a "rate" charged by a utility as defined by section 3—116 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 3—116) (*e.g., City of Chicago ex rel. Thrasher v. Commonwealth Edison Co.* (1987), 159 Ill. App. 3d 1076, 1079, 513 N.E.2d 460, 462; *Consumers Guild of America, Inc. v. Illinois Bell Telephone Co.* (1981), 103 Ill. App. 3d 959, 962, 431 N.E.2d 1047, 1049; *Malloy v. Illinois Bell Telephone Co.* (1973), 12 Ill. App. 3d 483, 484, 299 N.E.2d 517, 517-18); and it is axiomatic that a plaintiff must exhaust that administrative remedy before it may request relief in the circuit court. *Thrasher*, 159 Ill. App. 3d at 1079, 513 N.E.2d at 462; *Klopp v. Commonwealth Edison* (1977), 54 Ill. App. 3d 671, 675, 370 N.E.2d 822, 825; *Adler v. Northern Illinois Gas Co.* (1965), 57 Ill. App. 2d 210, 218, 206 N.E.2d 816, 819.

A "rate," as defined by section 3—116, includes:

> "[E]very individual or joint rate, fare, toll, charge, rental or other compensation of any public utility or any two or more such individual or joint rates, fares, tolls, charges, rental or other compensation of any public utility or any schedule or tariff thereof, and any rule, regulation, charge, practice or contract relating thereto." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 3—116.)

This court has held that the term "rate" as defined in section 3—116 is to be interpreted broadly (*Klopp*, 54 Ill. App. 3d at 674, 370 N.E.2d at 824; *Malloy*, 12 Ill. App. 3d at 484-85, 299 N.E.2d at 518), and that it is the nature of the relief requested, and not the label attached thereto, that is determinative of whether the ICC has jurisdiction over a complaint. (*Thrasher*, 159 Ill. App. 3d at 1078, 513 N.E.2d at 462-63; *Cummings v. Commonwealth Edison Co.* (1965), 64 Ill. App. 2d 320, 323, 213 N.E.2d 18, 21.) While we have held that the ICC has exclusive jurisdiction over claims which in essence assert that a utility

---

[2]Section 9—252 provides in pertinent part:

"When complaint is made to the Commission concerning any rate or other charge of any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 9—252.

company has charged an excessive or unjust rate for its service (*Thrasher*, 159 Ill. App. 3d at 1078-79, 513 N.E.2d at 463; *Klopp*, 54 Ill. App. 3d at 674, 370 N.E.2d at 824; *Adler v. Illinois Commerce Comm'n* (1977), 52 Ill. App. 3d 167, 171, 367 N.E.2d 402, 405, *aff'd* (1978), 72 Ill. 2d 695, 381 N.E.2d 294; *Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 454-55, 340 N.E.2d 98, 102; *Malloy*, 12 Ill. App. 3d at 484-85, 299 N.E.2d at 518; *Cummings*, 64 Ill. App. 2d at 323-24, 213 N.E.2d at 21), we have made clear that suits for damages resulting from breach of contract or tortious conduct are properly brought in the first instance in circuit court pursuant to section 5—201 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 5—201).[3] *Thrasher*, 159 Ill. App. 3d at 1080, 513 N.E.2d at 463; *Consumers Guild*, 103 Ill. App. 3d at 962, 431 N.E.2d at 1049-50; *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 148-49, 345 N.E.2d 785, 792.

In this connection, we find the decision in *Gowdey* to be particularly instructive. In that case, the plaintiffs, who were customers of the defendant, filed a class action against the defendant for improperly administering a light bulb service which the defendant was required to provide. The plaintiffs alleged in their complaint that the defendant: (1) unlawfully used a "negative option" whereby the bulb service was included in a customer's bill unless the defendant otherwise specifically requested; (2) failed to disclose in its bills that a charge for the light bulb service was included or that the service was optional; (3) deceived customers through ambiguous advertising which led customers to believe that the service was both mandatory and free; and (4) wrongfully charged customers even though they never ordered the service. The customers sought both injunctive relief and damages. *Gowdey*, 37 Ill. App. 3d at 142, 345 N.E.2d at 787-88.

---

[3]Section 5—201 of the Act provides in pertinent part:
"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 5—201.

Eventually, a settlement was reached between the plaintiffs and the defendant, but a few customers objected to the terms thereof. When the trial court rejected their complaints, the objectors appealed, and one of the arguments which they posited to the appellate court was that the trial court lacked subject matter jurisdiction to approve the settlement. (*Gowdey*, 37 Ill. App. 3d at 146, 345 N.E.2d at 789-90.) After noting that the ICC would have exclusive original jurisdiction of the plaintiff's complaint if the action were under the purview of section 72 of the Act, we rejected the plaintiff's contention, reasoning:

"It appears to us that section 72 deals with the question of an overcharge. It provides that where the public utility has charged 'an excessive or unjustly discriminatory amount' for its product, commodity or service, the Commission may order due reparations to the complainant with interest from the date of repayment 'of such excessive or unjustly discriminatory amount.' Here, no challenge was made by plaintiffs or the objectors to the fairness of the light bulb service charge. *** Rather, they complain that [the defendant] wrongfully assumed its residential customers had exercised the option to purchase the service although [the defendant] had not received any affirmative indication that this was the fact.

***

*** We believe section 72 is meant to grant the Commission, which has exclusive authority for rate making, an opportunity to first review any allegation that a rate or charge set by the Commission is excessive. In this action, no such agency expertise in rate making is necessary. The complaint is made simply that plaintiffs were charged for a service which they did not contract to purchase. We think the action here was not for a charge of 'an excessive or unjustly discriminatory amount' within the meaning of section 72 which only the Commission could correct; but, instead, that it centers in the alleged failure of [the defendant] to effectively comply with the mandate of the supreme court *** that the bulb service be truly optional." *Gowdey*, 37 Ill. App. 3d at 148-49, 345 N.E.2d at 792-93.

Accord *Consumers Guild*, 103 Ill. App. 3d at 964-65, 431 N.E.2d at 1051 (circuit court had jurisdiction to hear the plaintiff's complaint because it "has repeatedly conceded the propriety of the rates charged, and seeks damages not because of allegedly excessive or discrimina-

tory rates but because it was misled by defendant's misrepresentations into using the wrong type of service").

■ In the instant case, it is plain, as it was in *Gowdey*, that plaintiff is not claiming that Bell and AT&T charged excessive or unjustly discriminatory rates for the service she received. Instead, she claims that the services and equipment in question—the "inside wire service, telephones, and telephone jacks—were either unordered, inadequate or ambiguously billed." We find that these questions do not deal with rates or charges which are set by the Commission which would require their special expertise; instead, we find that they are ordinary claims for damages and injunctive relief for breach of contract, which are "issues *** within the conventional experience of judges and are typically within the competence of the courts." (*Consumers Guild*, 103 Ill. App. 3d at 965, 431 N.E.2d at 1059.) Accordingly, we hold that the trial judge erred in deciding that the ICC and not the court had original subject matter jurisdiction of plaintiff's contract actions against Bell and AT&T.

■ Bell nevertheless argues that we should uphold the trial court's dismissal of plaintiff's contract claims against it for the reason that she did not allege sufficient facts which would allow for her recovery. We disagree. A complaint for breach of contract is adequate if it alleges evidence of a contract, plaintiff's performance of all required conditions, facts indicating the defendant's breach, and the existence of damages as a consequence thereof. *Berg & Associates, Inc. v. Nelson Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 534, 580 N.E.2d 1198, 1203, *appeal denied* (1992), 143 Ill. 2d 635, 587 N.E.2d 1011.

In the case *sub judice*, plaintiff's exhibit E, attached to the first amended complaint, is a letter to customers wherein Bell states that it would not furnish the inside wire maintenance service and would eliminate the accompanying charge if the customer so requested. Plaintiff alleged in her first amended complaint that she told Bell representatives on several occasions that she did not want this service. She further averred that Bell continued to charge her for this service despite her requests that it cease doing so. Finally, plaintiff alleged that Bell had threatened to disconnect her telephone service if she continued in her refusal to pay the charge for this service. We hold these allegations to be sufficient to state a cause of action in contract.

For all of these reasons, we reverse the trial court's dismissal of counts I, II and the second count IV of plaintiff's first amended complaint.

## IV

Plaintiff next contends that the trial court improperly dismissed counts III and V of her first amended complaint which prayed for damages for defendants' alleged intentional infliction of emotional distress upon her. The court dismissed this cause of action, holding as a matter of law that none of the facts alleged by plaintiff amounted to the type of extreme and outrageous conduct which must be present in order to recover under that theory.

■ We agree with the trial court that plaintiff's first amended complaint does not sufficiently state a cause of action for intentional infliction of emotional distress. The Illinois Supreme Court first recognized, in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, the tort of intentional infliction of emotional distress. In order to establish such a tort, a plaintiff must plead and prove that: (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant either intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause severe emotional distress. (*Kolegas*, 154 Ill. 2d at 20, 607 N.E.2d at 211; *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809.) In order to determine whether a complaint states such a cause of action, the court must look to the facts of each individual case. *Knierim*, 22 Ill. 2d at 86, 174 N.E.2d at 165; *Miller v. Linden* (1988), 172 Ill. App. 3d 594, 597, 527 N.E.2d 47, 49; *Hearon v. City of Chicago* (1987), 157 Ill. App. 3d 633, 635, 510 N.E.2d 1192, 1194.

Although the court in *Knierim* established the tort in 1961, it was not until 1976, in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, that it outlined the nature of the conduct which must be alleged in order to give rise to the cause of action:

> "First, the conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency \*\*\*.' [Citation.]

Second, infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' [Citation.]" (Emphasis in original.) *Public Finance Corp.*, 66 Ill. 2d at 89-90, 360 N.E.2d at 767.

In the case at bar, we find that there can be no question but that defendants' conduct, as pleaded by plaintiff in her first amended complaint, does not even approach the type of outrageous and extreme behavior required to state a cause of action for intentional infliction of emotional distress. (See *Public Finance Corp.*, 66 Ill. 2d at 91, 360 N.E.2d at 768 (frequent calls from plaintiff to defendant for collection of debt, often more than once per day and even while she was in the hospital, insufficient to plead a cause of action for intentional infliction of emotional distress); *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 855, 392 N.E.2d 591, 595 (three threatening telephone calls from defendant wherein he used profanity and threatened to steal the plaintiff's furniture was insufficient to plead a cause of action for intentional infliction of emotional distress); *Kelly v. Franco* (1979), 72 Ill. App 3d 642, 648-49, 391 N.E.2d 54, 59 (repeated telephone calls by defendant to plaintiff threatening to force plaintiffs out of the neighborhood were insufficient to state a cause of action for intentional infliction of emotional distress).

At worst, here, representatives of defendants telephoned plaintiff and informed her that if she did not pay the outstanding balance on her telephone bills, her telephone service would be discontinued. However, "[a] creditor must be given some latitude to pursue reasonable methods of collecting debts even though such methods may result in some inconvenience, embarrassment or annoyance to the debtor. The debtor is protected only from oppressive or outrageous conduct." (*Public Finance Corp.*, 66 Ill. 2d at 92, 360 N.E.2d at 768.) In any event, a telephone company's threat to disconnect telephone service when disputed bills are not paid cannot in any sense be considered "conduct beyond all possible bounds of decency." See 83 Ill. Adm. Code §735.130 (1991) (allowing telephone companies to disconnect telephone service under certain circumstances).

Moreover, plaintiff does not claim that the distress which she suffered as a result of defendants' conduct was severe. Instead, she merely asserts that she was frustrated, annoyed and disgusted with the phone service provided by defendants, and especially with the "run around" she was given by their employees. Our supreme court has unequivocally stated, however, that this type of emotional distress is simply not actionable. *Public Finance Corp.*, 66 Ill. 2d at 90, 360 N.E.2d at 767.

Accordingly, we hold that the trial court properly dismissed counts III and V of plaintiff's complaint for failure to state a cause of action for intentional infliction of emotional distress.

## V

■ Finally, plaintiff asserts that the trial court erred by dismissing without comment counts IV and VI of plaintiff's first amended complaint which sought injunctive relief against defendants in her own behalf and in behalf of all others similarly situated, pursuant to the Consumer Fraud Act.

Plaintiff's argument is baseless. We have invariably held that only the Attorney General may enjoin a party who is engaging in an unlawful practice under the Consumer Fraud Act, and that a plaintiff's sole remedy under the statute is for damages. (*Greenberg v. United Airlines* (1990), 206 Ill. App. 3d 40, 45, 563 N.E.2d 1031, 1036, *appeal denied* (1991), 137 Ill. 2d 664, 571 N.E.2d 148; *Martin v. Eggert* (1988), 174 Ill. App. 3d 71, 76-77, 528 N.E.2d 386, 389, *appeal denied* (1988), 123 Ill. 2d 559, 535 N.E.2d 403; *Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 74, 424 N.E.2d 1253, 1261; *Bonner v. Westbound Records, Inc.* (1977), 49 Ill. App. 3d 543, 547, 364 N.E.2d 570, 573; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 277, 361 N.E.2d 815, 822.) Consequently, since plaintiff has no standing to bring her claims for injunctive relief under the Consumer Fraud Act, we hold that the trial court properly dismissed counts IV and VI of her amended complaint.

For all of the foregoing reasons, we affirm the trial court's dismissal of counts III, IV, V and VI of plaintiff's first amended complaint, reverse its dismissal of counts I, II and the "second count IV" of her first amended complaint, and remand the cause for proceedings not inconsistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

McCORMICK, P.J., and HARTMAN, J., concur.