THIRD DIVISION

May 27, 1998

No. 1-97-1511

VILLAGE OF EVERGREEN PARK, )

a municipal corporation, )

individually and on behalf of all )

other municipal corporations ) APPEAL FROM THE CIRCUIT similarly situated, ) COURT OF COOK COUNTY.

)

Plaintiff-Appellant, )

)

v. )

) HONORABLE LESTER D.

COMMONWEALTH EDISON COMPANY, ) FOREMAN, JUDGE PRESIDING.

an Illinois corporation, )

)

Defendant-Appellee. )

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Plaintiff, Village of Evergreen Park (the Village), brought the instant class action lawsuit, seeking monetary and equitable relief against the defendant, Commonwealth Edison Company (Commonwealth Edison), alleging that the defendant, a public utility, had wrongfully collected money for lighting equipment and services.  Pursuant to defendant's section 2-619 motion (735 ILCS 5/2-619 (West 1996), the trial court dismissed plaintiff's complaint for lack of subject matter jurisdiction.  For the reasons discussed below, we affirm the dismissal of plaintiff's complaint.

The plaintiff's amended complaint alleged that, since approximately 1950, the Village had been a party to a contract with Commonwealth Edison whereby Commonwealth Edison agreed to furnish and the Village agreed to pay for municipal street lights under Tariff Rate 23, entitled Municipal Street Lighting, that Commonwealth Edison had filed with the Illinois Commerce Commission.  The complaint further alleged that Rate 23 lights and brackets were mounted by Commonwealth Edison on wooden utility poles owned by Commonwealth Edison and that Commonwealth Edison retained ownership of and maintenance responsibility for the lights, brackets, fixtures and any other equipment.  Pursuant to Rate 23, Commonwealth Edison issued a monthly bill to the Village for the equipment and electrical service charges for each Rate 23 light.  The complaint alleged that, over time, the Village cancelled numerous Rate 23 street lights and that Commonwealth Edison correspondingly disconnected and removed the mounted light fixture and attendant equipment for which it was no longer entitled to collect a service charge.

The complaint alleged that in 1993 the Village conducted an audit of its utility billings which revealed that Commonwealth Edison had charged the Village, dating back to 1980, for certain Rate 23 municipal street lights that Commonwealth Edison had removed or had otherwise taken out of service.  Commonwealth Edison agreed to reduce the Village's monthly Rate 23 lighting charge on a prospective basis but refused to reimburse the Village for erroneous charges that the Village had paid.  The Village sought injunctive relief and recovery of those charges based upon theories of unjust enrichment, fraud, negligent misrepresentation, and violation of section 9-101 of the Public Utilities Act (220 ILCS 5/9-101 (West 1996)).

In its motion to dismiss the Village's amended complaint, Commonwealth Edison alleged that the court lacked subject matter jurisdiction.  The motion and supporting memorandum argued that, in accordance with the Public Utilities Act (the Act) (220 ILCS 5/1-101 
et
 
seq
. (West 1996)), the Illinois Commerce Commission had exclusive original jurisdiction over claims for refunds or overcharges.  The trial court agreed, finding that the plaintiff's case was an overcharge case.

A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure presents only a question of law, and review of a dismissal pursuant to that provision is 
de
 
novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 619 N.E.2d 732 (1993); 
Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.
, No. 1-96-1159 (March 4, 1998).  The Public Utilities Act authorizes the Illinois Commerce Commission (Commission) to order a public utility to make reparation when the Commission determines that a public utility has charged an excessive or unjustly discriminatory amount for its service.  In that regard, section 9-252 provides in pertinent part:

"When complaint is made to the Commission concerning any rate or other charge of any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefore, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."  220 ILCS 5/9-252 (West 1996).

With respect to refunds for overcharges, section 9-252.1 of the Act provides:

"When a customer pays a bill as submitted by a public utility and the billing is later found to be incorrect due to an error either in charging more than the published rate or in measuring the quantity or volume of service provided, the utility shall refund the overcharge with interest from the date of overpayment at the legal rate or at a rate prescribed by rule of the Commission.  ***  Any complaint relating to an incorrect billing must be filed with the Commission no more than 2 years after the date the customer first has knowledge of the incorrect billing."  220 ILCS 5/9-252.1 (West 1996).

The term "rate" is defined by the Public Utility Act to include:

"every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility * * * and any rule, regulation, charge, practice or contract relating thereto."  220 ILCS 5/3-116 (West 1996).

In accordance with sections 9-252 and 9-252.1 of the Act, the Commission has exclusive jurisdiction over complaints of excessive rates or overcharges by public utilities; and courts have jurisdiction over those matters only on administrative review.  
E.g.
, 
Chicago ex rel. Thrasher v. Commonwealth Edison Co.
, 159 Ill. App. 3d 1076, 513 N.E.2d 460 (1987); 
Citizens Utilities Co. v. Illinois Commerce Comm'n
, 157 Ill. App. 3d 201, 510 N.E.2d 52 (1987); 
Gowdey v. Commonwealth Edison Co.
, 37 Ill. App. 3d 140, 345 N.E.2d 785 (1976).  See 
Terminal R. R. Ass'n v. Public Utilities Comm'n
, 304 Ill. 312, 317, 136 N.E. 797, 799 (1922), stating: 

"The evident intent and purpose of the Legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the Commission precludes an action at law for such reparation until the Commission has heard a claim therefor."

The Commission's jurisdiction has been interpreted broadly since  section 9-252 refers to rates or "other charge[s] of any public utility" (220 ILCS 5/9-252 (West 1996)).  See 
Sutherland
 v. Illinois Bell
, 254 Ill. App. 3d 983, 627 N.E.2d 145 (1993); 
Klopp v. Commonwealth Edison Co.
, 54 Ill. App. 3d 671, 370 N.E.2d 822 (1977); 
Malloy v. Illinois Bell Telephone Co.
, 12 Ill. App. 3d 483, 299 N.E.2d 517 (1973).  If the plaintiff's action is not one for reparations under sections 9-252 or 9-252.1, but rather seeks civil damages based upon a violation of other provisions of the Act or any rule, regulation, order or decision of the Commission, then the circuit court has jurisdiction.  220 ILCS 5/5-201 (West 1996); 
Thrasher
, 159 Ill. App. 3d 1076, 513 N.E.2d 460; 
Gowdey
, 37 Ill. App. 3d 140, 345 N.E.2d 785.

In the instant case, the plaintiff concedes that the Commission has exclusive jurisdiction over claims seeking reparation for excessive charges (220 ILCS 5/9-252 (West 1996)) and for claims for refund for overcharges due to "error either in charging more than the published rate or in measuring the quantity or volume of service provided" (220 ILCS 5/9-252.1 (West 1996)).  The plaintiff, in reliance primarily on 
Gowdey
, 37 Ill. App. 3d 140, 345 N.E.2d 785; 
Consumers Guild of America, Inc. v. Illinois Bell Telephone Co.
, 103 Ill. App. 3d 959, 431 N.E.2d 1047 (1981); and 
Sutherland
, 254 Ill. App. 3d 983, 627 N.E.2d 145, argues, however, that a claim that a utility is charging for equipment or services that the customer did not contract to purchase is not a claim for overcharge within the exclusive jurisdiction of the Commission but is instead a claim for breach of contract or misrepresentation that belongs in the circuit court.  The plaintiff argues that its claim, like the claims brought in those cases, is a claim for breach of contract premised on the defendant's violation of its agreement to charge only for those Rate 23 lights that were in service.  The defendant, in reliance on 
Malloy
, 12 Ill. App. 3d 483, 299 N.E.2d 517; 
Thrasher
, 159 Ill. App. 3d 1076, 513 N.E.2d 460; 
Burke v. Illinois Bell Telephone Co.
, 348 Ill. App. 529, 109 N.E.2d 358 (1952); and 
Cummings v. Commonwealth Edison Co.
, 64 Ill. App. 2d 320, 213 N.E.2d 18 (1965), argues that the plaintiff's claim concerns rates and overcharges and the measurement of the quantity or volume of service provided.  The defendant argues that the plaintiff is seeking relief in the form of a refund or reparation such that its claim falls within the exclusive jurisdiction of the Commission.  For the reasons discussed below, we agree with the defendant.

In 
Gowdey
, 37 Ill. App. 3d 140, 345 N.E.2d 785, the plaintiffs, who were customers of defendant Commonwealth Edison, alleged that the defendant utility violated Commission and judicial orders by failing to advise its customers that light bulb service was optional.  The plaintiffs sought recovery of charges they paid for that service which they did not contract to purchase.  With respect to the issue of subject matter jurisdiction, the court found the plaintiffs' action was for civil damages under section 73 (now section 5-201) of the Act rather than for reparations for an overcharge under section 72 (now sections 9-252 and 9-252.1) of the Act.  In that regard the court stated:

"We believe Section 72 is meant to grant the Commission, which has exclusive authority for rate making, an opportunity to first review any allegation that a rate or charge set by the Commission is excessive.  In this action no such agency expertise in rate making is necessary.  The complaint is simply that plaintiffs were charged for a service which they did not contract to purchase."  
Gowdey
, 37 Ill. App. 3d at 149, 345 N.E.2d at 793.

Similarly in 
Consumers Guild
, 103 Ill. App. 3d 959, 431 N.E.2d 1047, the court found that the allegations in the plaintiff's complaint did not challenge the rates charged and thus did not invoke the jurisdiction of the Commission.  In that case, the plaintiff alleged that the defendant telephone company had negligently misrepresented the type of telephone service needed by the plaintiff.  The court concluded:

"The plaintiff in the present case seeks to recover damages incurred because of negligent misrepresentations or the negligent performance of a duty voluntarily assumed by the defendant's employee.  Thus the case sounds in tort and the claims 'are the type of traditional claims within which our trial courts of general jurisdiction are most familiar and capable of dealing.'  [Citation.]  *** [T]he plaintiff has repeatedly conceded the propriety of the rates charged, and seeks damages not because of allegedly excessive or discriminatory rates but because it was misled by defendant's misrepresentations into using the wrong type of service."  
Consumers Guild
, 103 Ill. App. 3d at 964-65, 431 N.E.2d at 1051.

In reliance on 
Gowdey
 and 
Consumers Guild
, the 
Sutherland
 court also found that the circuit court had jurisdiction over plaintiff's claims alleging that she was unlawfully charged for inside wire service that was never ordered as well as for defective telephones and improperly installed telephone jacks.  
Sutherland
, 254 Ill. App. 3d 983, 627 N.E.2d 145.  The court found that the plaintiff's claims did not concern rates or charges set by the Commission which would require the Commission's special expertise.  Rather, according to the court, the claims were ordinary breach of contract claims within the conventional experience of trial courts.  
Sutherland
, 254 Ill. App. 3d at 993, 627 N.E.2d at 152.

Unlike in 
Gowdey
 and 
Sutherland
, the plaintiff's claim in the instant case is not one of contract formation and misrepresentation and does not require inquiry into the nature of the parties' bargain or, more specifically, whether the plaintiff had contracted with the public utility to purchase certain services.  Also, unlike in 
Consumers Guild
, plaintiff's claim does not raise questions as to what representations or promises were made by the public utility to the plaintiff and whether those representations and promises of service were false.  Here, there is no question regarding the contractual relationship of the plaintiff and the defendant nor is there any question regarding the terms of their contract.  As discussed above, it is undisputed that the defendant agreed to provide and the plaintiff agreed to pay for municipal street lights under Tariff Rate 23 at the rates established under that tariff.  The plaintiff's claim deals with the application of those rates and the charges incurred for lights cancelled by the plaintiff and disconnected or taken out of service by the defendant.  Plaintiff's claim seeks recovery for overcharges based upon alleged errors by the defendant in quantifying the number of lights in service.  Refunds for such overcharges are within the original jurisdiction of the Commission pursuant to section 9-252.1 of the Act.  220 ILCS 5/9-252.1 (West 1996).

The plaintiff argues that questions of contract formation exist in the instant case.  Specifically, the plaintiff argues that questions exist as to whether each light was the subject of a separate contract.  It contends that if each light was the subject of a separate contract, then the Village's request to remove the light terminated the contract thereby creating the situations set forth in 
Gowdey v. Commonwealth Edison Co.
, 37 Ill. App. 3d 140, 345 N.E.2d 785 (1976) and 
Sutherland v. Illinois Bell
, 254 Ill. App. 3d 983, 627 N.E.2d 145 (1993), wherein the plaintiffs were charged for services and equipment that they did not contract to purchase.  Initially, we note that this argument was not raised in the court below and thus is waived.  See, 
e.g.
, 
Downes Swimming Pool, Inc. v. North Shore National Bank
, 124 Ill. App. 3d 457, 464 N.E.2d 761 (1984) (issues presented by appellant on appeal are waived by failing to raise them before the trial court).  Moreover, even if we were to reach this argument, we would reject it on its merits.  Contrary to the plaintiff's contentions, there is nothing in the language of Tariff Rate 23, entitled "Municipal Street Lighting," to support a finding that each light was the subject of a separate contract.  If anything, the language therein suggests that one contract exists for the entire street lighting system of the Village.  It states that "the Company will furnish and operate the necessary facilities to supply street lighting service *** for the number of lighting units ordered by the Customer."  It states that the "charges for service supplied in any month shall be determined on the basis of the number of lighting units and other equipment in place at the beginning of the month."  The fact that Rate 23 establishes a charge per light does not lead to the conclusion that a separate contract exists for each light.  Furthermore, with respect to cancellability, Rate 23 provides for the cancellability of the "contract with respect to any lighting unit served hereunder"; it does not provide for cancellability of "each contract" for each lighting unit.  These terms and others suggest the existence of one contract to provide street lighting services to the Village and that the monthly charge for that service was to be based on "the number of lighting units and other equipment in place at the beginning of the month."

The fact that the plaintiff labels its action a breach of contract action is not dispositive nor does it transform plaintiff's action into a civil action for damages (see 220 ILCS 9/5-201 (West 1996)).
(footnote: 1)  See 
Malloy
, 12 Ill. App. 3d at 485, 299 N.E.2d at 518, citing 
Cummings
, 64 Ill. App. 2d 320, 323-24, 213 N.E.2d 18, 21.  Irrespective of that label, it is apparent that the plaintiff is seeking a refund of part of the charges it paid the defendant and, consequently, plaintiff is alleging a claim for reparations under sections 9-252 and 9-252.1 of the Act.

Plaintiff's claim is similar to the claims brought in 
Malloy
 and 
Thrasher
 wherein original jurisdiction was found to reside with the Commission.  In 
Malloy
, the plaintiff, a telephone subscriber, sought a refund for a six-day period during which her service was interrupted.  In finding that the ICC had original jurisdiction the court stated, "Whatever the plaintiff may seek to term the amount paid the defendant, that amount constituted a 'charge' or 'rate' within the meaning of section 72 [now sections 9-252 and 9-252.1] and her claim is for reparations within its meaning as well."  
Malloy
, 12 Ill. App. 3d at 485, 299 N.E.2d at 518.  In reaching this conclusion, the court noted that plaintiff's failure to seek a rate schedule revision or to fix utility rates for the future "'would not bring this matter within the powers of a court of equity and outside the exclusive jurisdiction of the Illinois Commerce Commission.'"  
Malloy
, 12 Ill. App. 3d at 485, 299 N.E.2d at 518, quoting 
Cummings
, 64 Ill. App. 2d 320, 323-24, 213 N.E.2d 18, 21 (1965).

The case of 
Chicago ex rel. Thrasher v. Commonwealth Edison Co.
, 159 Ill. App. 3d 1076, 513 N.E.2d 460 (1987), is directly on point.  There, the plaintiff alleged that the defendant overcharged the city for electricity supplied to the city for street lighting pursuant to contract.  The plaintiff alleged that the method the defendant used to determine the quantities of electricity was not in accordance with the terms of the contract.  Specifically, the plaintiff alleged that the defendant's estimates of service did not take into account bulbs that were burned out.  In concluding that the ICC had original jurisdiction over plaintiff's claim, the court stated:

"In determining whether an action is within the exclusive jurisdiction of the ICC pursuant to section 72 [now sections 9-252 and 9-252.1] or within the circuit court's jurisdiction pursuant to section 73 [now section 5-201], courts have consistently focused on the nature of the relief sought rather than on the plaintiff's basis for seeking the relief.  [Citation.]  Where the essence of the claim is that a utility has charged too much for the service provided, the claim is for reparations.  [Citation.]  Where the essence of the claim is not that too much has been charged for service, but rather that the utility has done something else which has wronged the plaintiff, the claim is for ordinary damages.  [Citation.]  Here, the proper form of relief, if any, is reparation under the Act."  
Thrasher
, 159 Ill. App. 3d at 1079-80, 513 N.E.2d at 462-63.

See also 
Burke v. Illinois Bell Telephone Co.
, 348 Ill. App. 529, 109 N.E.2d 358 (1952) (plaintiffs' complaint seeking refund for utility's failure to publish directory for which they had paid is claim for reparations).

Here, as in 
Thrasher
, the plaintiff is contesting the manner in which the public utility measured the quantity of the service provided.  Here, as in 
Thrasher
, the plaintiff alleged that it was charged for electrical services with respect to street lights that were not operational.  (In 
Thrasher
, the bulbs in the street lights were burned out, whereas in the instant case the street lights had been removed.)  The essence of both claims is that the utility charged too much for the service it provided.  Thus, as in 
Thrasher
, the claim in the instant case is within the exclusive jurisdiction of the Illinois Commerce Commission.

For the foregoing reasons, the order of the Circuit Court of Cook County dismissing plaintiff's action is affirmed.

Affirmed.

CAHILL and BURKE, JJ., concur.

FOOTNOTES
1:
As noted earlier in this opinion, plaintiff's complaint presented several theories of recovery including those sounding in tort.  It appears that the plaintiff has abandoned those theories on appeal, since its sole argument on appeal is that the "defendant wrongfully collected money for equipment and services that plaintiff did not 
contract
 
to
 
receive
 and that defendant did not provide."  (Emphasis added.)  Moreover, even if plaintiff asserts that it sought civil damages based upon other substantive legal theories, as discussed in the text of this opinion, no matter how designated, plaintiff cannot escape the fact that it is seeking a refund for overpayment of a "charge."